(95 South. 894)

**POLLOCK et al. v. POPE.** (2 Div. 780.)

(Supreme Court of Alabama. April 5, 1923.)

**1. Appeal and error ⬅174—Motion to dismiss held not to present want of interest in appellants.**

Where a motion to strike the bill of reviver on the ground that complainants were not the parties entitled to maintain it was not sought to be reviewed, and no demurrer was filed to the bill on that ground, a motion to dismiss an appeal by complainants from the final decree for defendant does not raise the question of the right of complainants to maintain the bill.

**2. Reformation of instruments ⬅33—Representatives of partner who had bought out copartner before his death are proper parties to suit to reform partnership deed.**

The representatives of a decedent, who had before his death bought out his partner's interest in the partnership, are the persons interested in securing a reformation of a partnership deed, and not the surviving partner.

**3. Reformation of instruments ⬅33—Devisees of grantor held proper parties to reform deed and mortgage.**

In a suit to reform a deed and mortgage, which by mistake described land not intended to be conveyed, devisees of the grantor who had warranted title to the property are, if not necessary parties, at least proper parties complainant.

**4. Reformation of instruments ⬅45(I) — Court proceeds with utmost caution in reforming written instrument.**

The court requires a high degree of proof and proceeds with the utmost caution in exercising its discretion to reform written instruments, which involves the invasion of a salutary rule of evidence prevailing at law and in equity.

**5. Reformation of instruments ⬅45(5)—Evidence held to show mutual mistake in description in deed and mortgage.**

Evidence that the grantors of a tract of land owned the south half of the south half of a government section, and that the deed and mortgage, which were prepared by grantor's attorney, who lived in a different city, and obtained the description from a letter, described the property as the south half of the section, *held* sufficient to show that the description was a mere clerical error, so that the deed and mortgage can be reformed to correct the mistake.

**6. Vendor and purchaser ⬅80—Evidence held to show purchase for lump sum, not by the acre.**

Evidence that the purchaser was familiar with the tract of land which the vendors had bought from another, and which was all the land the vendors owned in that vicinity, and that he recorded the deed, cut timber from the property, and procured an extension of time for the payment of the mortgage after he knew that the deed stated the acreage was not warranted, *held* to show a purchase of the tract for a lump sum, and not a purchase by the acre, entitling the purchaser to a rebate of the purchase price for deficiency in the acreage.

**7. Vendor and purchaser ⬅177—Purchaser held to have ratified deed conveying land without warranty of acreage.**

Where a purchaser of land learned before he recorded the deed that the grantors had inserted therein a clause refusing to warrant the acreage, and thereafter cut valuable timber from the land and paid part of the purchase-money notes secured by mortgage on the land, he had ratified and confirmed the contract, and cannot claim thereafter a rebate for deficiency in acreage.

Appeal from Circuit Court, Marengo County; R. I. Jones, Judge.

Bill by Julia A. Pollock and others, as executors of Jacob Pollock, deceased, and others, against S. M. Pope. Decree for respondent, and complainants appeal. Reversed, rendered, and remanded.

The original bill was filed by Jacob Pollock and Edwin Bernheimer, partners doing business under the firm name of Pollock & Bernheimer, against S. M. Pope, seeking a reformation of a certain deed to land situated in Marengo county, executed by said Pollock & Bernheimer to said Pope; also a reformation of the purchase-money mortgage on said land, executed by Pope to Pollock and Bernheimer, and the foreclosure of the mortgage for the balance remaining due thereon.

Pollock & Bernheimer in 1895 purchased from George F. Nichols the following described land:

"All that part of the south half of the south half of section 15, and all that part of the north half of section 22, lying west of the Bashi and Hoboken public road, being 45 chains east and west at the north side, and 59 east and west on the south side, containing 360 acres, more or, less, all in township 12, range 2 east, lying and being in the county of Marengo and state of Alabama."

In December, 1904, Pollock & Bernheimer, for a consideration of $1,500, one-third cash and the balance in two equal payments, evidenced by notes payable November 1, 1905, and November 1, 1906, respectively, sold, as the bill alleges, to S. M. Pope, the above-described real estate which they had purchased from Nichols, and which was gener-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ally known as the McVay place. The description in the deed to Pope was as follows:

"As all that portion of the south half of section 15 and that portion of the north half of section 22, which lies west of the Bashi and Hoboken public road, all in township 12, range 2, east, containing 360 acres, more or less, but we do not warrant the number of acres therein to be more than the actual acres conveyed to us by George F. Nichols, as contained in his description of his deed to us."

It is to be noted that in the deed to Pollock & Bernheimer the description begins as, "All that part of the south half of the south half of section 15," but in the deed to Pope it reads, "As all that portion of the south half of section 15"; and the bill alleges this was a mistake of the scrivener, as the vendors intended only to sell, and the vendees to purchase, the place bought by Pollock & Bernheimer from Nichols, as described in the deed to the former and that the misdescription was the result of a clerical error. The same mistake was carried forth in the description in the mortgage given by Pope to Pollock & Bernheimer.

Respondent answered the bill, denying the complainants only agreed to sell the tract of land bought by them from Nichols, denying there was any mistake, and further alleging that in the deed to him, as originally prepared, the number of acres was represented to be 360, and that such was the oral representation of complainants when bargaining for this tract of land; that the deed was prepared by complainant's attorney and forwarded to complainants for execution in Mobile, and the following words added to the description:

"But we do not warrant the number of acres therein to be more than the actual acres conveyed to us by George F. Nichols, as contained in his description of his deed to us."

Respondent insists that he was an uneducated man, and was not aware of this correction of the deed before the transaction was finally closed, not having read the same over at the time it was delivered to him through the mail, and that in September, 1906, he had a survey made of the land and discovered that it only contained 251 acres. Respondent therefore seeks to have an abatement of the purchase price on this account, and asked that his answer be considered as a cross-bill. The material averments of the answer and cross-bill were denied by complainants.

In the progress of the cause, after considerable testimony was taken, Jacob Pollock died, and his death was suggested of record, and a petition for a reviver was filed by these appellants as executors of the last will of Jacob Pollock, deceased, and by appellants Julia Pollock, Claire Pollock, and Antoinette Altmeyer individually, who as devisees under the will, became entitled to this property, and were interested as such in the result of this litigation. The court entered an order granting the prayer of the petition, allowing the filing of the bill of reviver, which bill was filed, more formality being observed than is now required under the practice prevailing in this state (chancery rule 101, p. 1559, Code 1907).

Respondent, Pope, thereafter appeared and moved to strike the bill of reviver for the reason that it is not shown the parties complainant in the reviver are necessary or proper parties, and that it appears the suit should have been prosecuted in the name of Bernheimer, the surviving partner. It appears, however, from the proof without dispute that the partnership of Pollock & Bernheimer had been dissolved, and that Pollock had purchased from Bernheimer and continued to own his entire interest in all the assets of the firm. This motion was overruled, and no review by this court has been sought.

The original answer and cross-bill of respondent, Pope, were thereafter refiled, and complainants' answers to the cross-bill, together with respondent Pope's amendment to the cross-bill, were refiled.

The cause proceeded, and on final submission decree was rendered denying the relief sought in the original bill, granting the relief prayed for in the cross-bill, and the complainants were ordered to surrender the mortgage to the register of the court and cancel the same. From this decree the complainants have prosecuted this appeal.

Henry McDaniel, of Demopolis, and Palmer Pillans and A. T. Gresham, both of Mobile, for appellants.

An appeal lies from a final decree of the chancery court as a matter of right, and is taken when sufficient surety is lodged with the register, within the time prescribed. Code 1907, §§ 2837, 2868; Acts 1915, p. 711; Acts 1919, p. 84; Jacobs v. Goodwater Co., 205 Ala. 112, 87 South. 363. All the appellants were properly made parties to the bill. Chancery Rules 101–103, Code 1907, pp. 1559, 1560; Wells v. Am. Mortg. Co., 109 Ala. 438, 20 South. 136; Floyd v. Ritter's Adm'r, 65 Ala. 501; Sims' Ch. Pr. 409; 1 C. J. 239. Reformation by a court of equity is appropriate when an agreement as written does not express the true agreement of the parties. Stone v. Hale, 17 Ala. 557, 52 Am. Dec. 185; Greene v. Dickson, 119 Ala. 346, 24 South. 422, 72 Am. St. Rep. 920; Stephenson v. Harris, 131 Ala. 470, 31 South. 445; Merritt v. Coffin, 152 Ala. 474, 44 South. 622. And where an instrument does not, from ignorance of the draftsman, express the true agreement of the parties, equity will reform it. Larkins v. Biddle, 21 Ala. 252; 2 Pom. Eq. Jur. (3d Ed.) p. 1540; Houston v. Faul, 86 Ala. 232, 5 South. 433. Fraud is never presumed; it must be specifically established. The presumption is in favor of innocence. Dudley v. Stansberry,

5 Ala. App. 491, 59 South. 379; Morris & Co. v. Barton & Allen, 180 Ala. 98, 60 South. 172; Moses v. Katzenberger, 84 Ala. 95, 4 South. 237. When a purchaser, with knowledge of the alleged facts which would entitle him to claim an abatement of the purchase money, enters into new stipulations with his vendor, by which he obtains a benefit and the other party sustains a detriment, he is regarded as ratifying the contract and it becomes obligatory on him. Thweatt v. McLeod, 56 Ala. 375; Edwards v. Roberts, 7 Smedes & M. 544; Pearsoll v. Chapin, 44 Pa. 9; 20 Cyc. 92.

Wm. Cunninghame, of Linden, for appellee.

Appellants must show legal injury to themselves. A joint assignment by all appellants is unavailable, unless well taken as to all. Roberts v. Trawick, 13 Ala. 68; Walker v. Jones, 23 Ala. 448; Magruder v. Campbell, 40 Ala. 611; Chavers v. Mayo, 202 Ala. 128, 79 South. 594. The debts from Pope to Pollock and Bernheimer were a mere chose in action; it was personal property, demandable only by Bernheimer. Sharpe v. Miller, 157 Ala. 299, 47 South. 701; Kyle v. Perdue, 87 Ala. 423, 6 South. 296; Shockley v. Christopher, 180 Ala. 140, 60 South. 317; Jones on Mortg. § 1399; 27 Cyc. 1566; 9 Ency. Pl. & Pr. 297. The bill must show that the devisees of Pollock had a right to proceed in their own name. Sullivan v. Lawler, 72 Ala. 72; Vincent v. Martin, 79 Ala. 540; Baker v. Mitchell, 109 Ala. 491, 20 South. 40; Bailey v. Selden, 112 Ala. 594, 20 South. 854; Blackburn v. Fitzgerald, 130 Ala. 584, 30 South. 568; Tillery v. Tillery, 155 Ala. 495, 46 South. 582; Wright v. Robinson, 94 Ala. 479, 10 South. 319. Where a purchaser is led to believe that he is getting 360 acres of land, when he is only getting 251 acres, he has the right to damages, irrespective of whether the deed was fraudulently changed. Code 1907, §§ 4298, 2468; Berry v. Wooddy, 16 Ala. App. 348, 77 South. 942; Shahan v. Brown, 167 Ala. 534, 52 South. 737; Terrell v. Kirksey, 14 Ala. 209; Hodges v. Denny, 86 Ala. 226, 5 South. 492. Courts of equity do not grant reformation upon probability, but upon certainty, of error. Hough v. Smith, 132 Ala. 204, 31 South. 500; Hertzler v. Stevens, 119 Ala. 333, 24 South. 521; Moore v. Tate, 114 Ala. 582, 21 South. 820.

GARDNER, J. [1] Appellee submits a motion to dismiss this appeal upon the theory that appellants, assigning errors here, show no right to appeal, or that they have not sustained any legal injury, and argue to the effect that these appellants were not proper or necessary parties to the cause, and that the same should have been continued in the name of the surviving partner, Bernheimer. There was no demurrer taking the point that these parties were not proper or necessary parties to the cause, nor is the decree overruling the motion to strike the bill of reviver here sought by respondent to be reviewed. The cause proceeded to a final submission, and decree was rendered against these appellants, who were parties complainant in the court below upon a reviver of the cause. We do not think, therefore, that the question argued is presented by motion to dismiss the appeal.

[2] Moreover, it is disclosed by the undisputed proof that the partnership of Pollock & Bernheimer had been dissolved, and that Pollock had acquired the entire interest of Bernheimer and continued to own the same. Those claiming under Pollock were therefore the parties really interested in the suit.

[3] Not only was a foreclosure of the mortgage on the real estate sought by this proceeding, but a reformation of the mortgage was also prayed, and likewise a reformation of the deed executed to Pope, which contained covenants of warranty. Whether the devisees under the will were necessary parties under these circumstances, they were certainly proper parties. Thompson v. Campbell, 57 Ala. 183; 34 Cyc. 967 et seq.

The motion to dismiss is overruled.

### Upon the Merits.

Upon the merits of the cause we will enter into no detailed consideration of the evidence, which has been given most careful study, but rest content with a brief reference to the pertinent facts upon which our conclusion is based.

[4] We recognize, of course, the high degree of proof and the utmost caution with which the court must proceed in the exercise of its jurisdiction in reforming written instruments, as it involves the invasion of a salutary rule of evidence prevailing at law and in equity. Hertzler v. Stevens, 119 Ala. 333, 24 South. 521.

[5] Upon the question of the reformation of these two written instruments, we are persuaded the complainants have fully met the burden of proof resting upon them in cases of this character.

We think it clear beyond question that Pollock & Bernheimer intended to sell, and that Pope intended to purchase, the tract of land known as the McVay place which Pollock & Bernheimer acquired from George Nichols in 1895. The acreage was estimated in the Nichols deed at 360, but, as the land was such as lay west of a certain public road, it appears without dispute that no one knew the actual number of acres contained therein, as it could only be ascertained by measurement. The testimony of Pope himself discloses that he had heard it questioned that the place contained 360 acres. The land in the north half of the south half of section 15 was owned and possessed by parties, strangers to this title, who had been in the adverse possession thereof for more than 20 years. The deed was prepared by the at-

torney of Pollock & Bernheimer in Thomasville, Clarke county, Ala., quite a distance from the home of the grantors in Mobile. The attorney did not have the Nichols deed before him, but seems to have gotten the description from a letter. And, indeed, the recitals in the deed following the description of the land clearly show that it was the intention of the grantors to convey only the land they purchased from Nichols. The mistake in the description reading the south half of section 15 instead of the south half of the south half of section 15 would appear to be a natural mistake under all the circumstances, and that it was merely a clerical error of the scrivener appears to our minds to be established beyond all reasonable controversy.

Respondent had lived near this land for a period of at least 30 years, and knew the Nichols place, referred to as the McVay place. Nichols was related to respondent, who had been on the place. He testified on cross-examination that he agreed to pay $1,500 for this land; to use the language of the witness:

"I agreed to pay $1,500 for the Pollock place that they got from George Nichols. They did not own any other land in that immediate neighborhood. I told Pollock I wanted the land he bought from George Nichols."

The mortgage was written by the same attorney, and the same mistake carried forward in the description. We are of the opinion, therefore, the complainants were entitled to reformation both of the deed and mortgage.

[6] A consideration of the evidence as bearing upon an abatement of the purchase price for fraudulent representation as to the number of acres contained in this tract of land has convinced us that the cross-complainant was not entitled to the relief he sought. As previously shown, he was well acquainted with this particular place, and knew the exact acreage was unknown as it had not been measured. The language of the deed disclosed that the grantors were careful to state they would not warrant the number of acres, and instructed their attorney to so notify Pope. The attorney insists that he inclosed a letter with the deed to Pope fully explaining what had been added following the description in the deed before its execution by the grantors. Pope offers proof to show that the letter was not in the envelope when the deed was received. But whether at that time he learned of the exact language of the deed is not so material in view of the fact that he admits that when the deed was filed for record in May, 1905, he then learned of its contents in regard to the acreage, and sub-sequently, possessing this information, he acquired from the grantors permission to sell timber off the land, for which he admits having received over $600, with which, in June, 1905, he paid the note due November 1, using the balance for individual purposes. In October, 1906, as the due date of the next note was approaching, he had one Hudson to write to the grantors asking for an extension until November 20, at which time he would come to Mobile and settle; no complaint being made as to any shortage of acreage.

We are therefore persuaded the respondent fully knew and understood that the acreage was uncertain and was not warranted to be 360 acres, or any definite amount, but that he bought for a lump sum the place acquired by his grantors from Nichols and known as the McVay place, without reference to definite acreage.

[7] Moreover, at the time Pope obtained permission from Pollock and Bernheimer to sell valuable timber from this property he confessedly had full knowledge of the fact that they did not represent or warrant the acreage to be 360, but, on the contrary, had expressly stated in the deed that they did not warrant the number of acres to be more than the acreage actually conveyed by the deed of George Nichols to them. At that time there were two notes not due in the sum of $500 each, and to denude the land of this valuable timber tended, of course, to greatly lessen the security. Pope, therefore, while the contract was in a sense executory, with full knowledge of all the facts, electing to proceed with its execution, obtaining a benefit, and his grantors sustaining a corresponding detriment, will be regarded as having ratified and confirmed the contract, and will not be allowed subsequently to impeach it. The evidence upon this phase of the case is well within the influence of Thweatt v. McLeod, 56 Ala. 375. We are therefore of the opinion that in either event the cross-complainant was not entitled to relief.

It results, therefore, as our conclusion, that the complainants are entitled to the relief they seek in the original bill, and that the cross-bill should be dismissed. A decree will be here rendered reforming the deed and mortgage as prayed in the original bill, and ordering a foreclosure of the mortgage, and a reference to the register to ascertain the amount due thereon, and a further decree denying cross-complainant relief and dismissing the cross-bill. The cause will be remanded to the court below for further proceedings in conformity with the decree here rendered.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.